In re Guardianship of Kelley, a Minor: Reeves, Appellee, *v.* Runyan et al., Appellants.[*]

(No. 189—Decided April 14, 1960.)

*Mr. Morton Y. Reeves,* for appellee.
*Mr. James M. Gorman,* for appellants.

Long, J. This is an appeal on questions of law from a judgment of the Probate Court of Clinton County, Ohio.

On November 1, 1950, at about 11:30 a. m., Lowanna Sue Kelley, a minor of the age of seven years, was playing with some other children on her way home from school, at the intersection of Pleasant and Williams Streets in the city of Springfield, Ohio. There was an ice truck blocking the crosswalk, and in front of the ice truck there was a parked car. In an effort to cross the street, the little girl darted out into the street, not on the crosswalk, but between the ice truck and the parked car, and ran into the side of the defendant's truck which was passing. Examination of the truck with which Lowanna Sue Kelley came in contact showed a dent in the front fender where her head went in, about "the shape of her head." The dent "wasn't in the front of it," it was "about a quarter of the way back in the fender; it was the shape of her head in the side of it." This is the testimony of the eyewitness Gansheimer, which is corroborated by the other eyewitness Mowry. Gansheimer was driving a truck immediately behind the truck, into the side of which Lowanna Sue Kelley ran; Mowry was seated beside Gansheimer,

---

[*]Judgment affirmed, 172 Ohio St., 177.

to Gansheimer's right.  As a result of her accident the little
girl received a linear fracture of the skull, was unconscious for
four days, remained in the hospital for ten or twelve days, was
kept out of school by her mother "the rest of December [2
months] and started back to school the first of January."  Not-
withstanding her absence from school for two months and
the fact that she was transferred to another school, her parents
having moved to Reesville, she successfully passed the first
grade; the family then moved to Sabina, and Lowanna Sue
Kelley passed successfully the second grade of school; again,
the family moved, and the little girl successfully passed the
third grade at Martinsville.  It was not until the fourth grade
that the little girl began to have "bad grades," at which time
the family decided to return to Springfield; the youngster was
placed in a "special grade."  During this time, Mrs. Kelley, the
mother and guardian, consulted a lawyer concerning the pos-
sible success of litigation growing out of her daughter's acci-
dent.  Mr. Olinger was the first attorney consulted, and appar-
ently he wanted some assurance of the progress of the medical
aspects of the case and asked Mrs. Kelley to get a "release"
from the doctor.  This refers to Dr. Shaner's medical report
under date of December 20, 1950.  Mr. Olinger had this report
for a year; the report was made less than two months after the
accident.  Apparently, recovery of the child was thought to be
satisfactory except that the doctor suggested that possible "post
traumatic epilepsy" should not be ruled out of the case.  Mr.
Olinger was the Kelleys' lawyer until the Spring of 1952, when
they employed Mr. Wm. T. Hicks as their attorney.  The record
discloses that Mr. Hicks obtained Dr. Shaner's report; that he
had a copy of the police report of the accident; and that he con-
tacted Gansheimer and Mowry and was told by them that the
driver of the truck with which Lowanna Sue Kelley came in con-
tact couldn't avoid the accident.  The police report showed de-
fendant's truck being driven between 25 and 30 miles per hour;
that the child ran into the truck; that the distance traveled by
the truck after the accident was 15 feet; that, "pedestrian num-
ber one she [the injured girl] was on her way home from school
and started to run across Pleasant Street and was struck by a
car which she did not see coming"; and that Runyan, driver of

defendant's truck, stated that he was going 25 to 30 miles per hour when the child ran from a parked truck into the right front of his car. Hicks testified that he talked to the eyewitnesses, the police, and to attorney Olinger, who had previously investigated the accident; that the attending physician told him that Lowanna Sue Kelley was a retarded child; that this condition had existed prior to her injury; and that there was a possibility of traumatic epilepsy. Dr. Shaner was the attending physician.

It was upon the development of these facts, that Hicks, on November 7, 1952, filed the application for the guardian, Mrs. Kelley, for consent to settle the claim for her daughter's injuries. Mrs. Kelley not only signed the application but, with her husband, waived any claims that they had as parents, all according to Section 2111.18 of the Revised Code. At the hearing, the doctor's report together with all the other items of evidence set forth herein were presented to Judge Pusateri, then the Probate Judge. Before making the application to settle the claim, Attorney Hicks discussed the case at least ten times with Mrs. Kelley; he denied that he made any false statements or representations to Judge Pusateri; he said he was sure that the Judge explained to Mrs. Kelley her rights and told her that the settlement was a final determination of the matter; and he also said that he recommended her acceptance of the offer.

It must be kept in mind that the accident happened on November 1, 1950, and that the application for consent to settle the claim was made over two years later. The evidence discloses that this was not one of those cases which was settled in a hurry; everybody connected with the case had plenty of time for reflection. The settlement was made in the best interests of the minor at the time, and in our opinion it was made in good faith by everyone having anything to do with the case. Then, six years after the settlement, or eight years after the accident, what happens? Lowanna Sue Kelley begins to show "bad grades" in her fourth grade at school, and her parents move back to Springfield and she is put in a "special grade." The father admitted knowing about Dr. Shaner's report that his daughter was retarded, but he distinguished between a retarded child and a "slow child." He also testified that you could see a

lot of changes in her after the accident * * * just in the way she would look at you''; and that ''she spoke much slower after the accident.'' The mother testified that ''her tongue wallowed in her mouth,'' but the doctor told her this was a natural physical result.

Let us not forget that, according to the record, not a syllable of medical testimony was offered sustaining the view that the little girl's reactions since the accident were symptomatic of ''traumatic epilepsy.'' It was not until the summer of 1953 that Mrs. Kelley began to feel that she made a mistake in accepting the settlement two and one-half years before. It was then that she consulted Mr. Herbert, another attorney. After an investigation, Mr. Herbert told Mrs. Kelley that if she could ''get signed statements from both the eyewitnesses he would take the case,'' and, ultimately, Herbert told her to ''take it to another lawyer.'' Mrs. Kelley testified that at that point she wrote Governor Lausche for advice, who told her to consult an attorney. Mrs. Kelley learned of a little girl in Cleveland who had a case and after consultation ''with them that is how I happened to see Mr. Reeves.'' In due time, she employed Mr. Reeves, who is her present lawyer. In July of 1953, Mr. Reeves, acting as next friend of the minor, filed a petition to set aside and vacate the order of settlement previously made by Judge Pusateri, then Judge of the Probate Court of Clinton County, Ohio. In his petition, Mr. Reeves alleged, among other things, that ''while acting under false representations, said Barbara A. Kelley was induced to sign an application for authority to settle [the] bodily injury claim. Further that she appeared in this court [Probate Court of Clinton County] and that this court after being *falsely* advised by Wm. T. Hicks [her attorney] and James Gorman, acting on behalf of the operator and owner of the motor vehicle, as to the injuries and facts of said accident, *ordered* said guardian to settle and adjust said claim and to give to said owner and operator a full release.''

There is not a scintilla of evidence that Judge Pusateri ordered Mrs. Kelley to do anything; he performed his office well, as an advisor.

It is true that at the hearing of the petition to set aside the settlement, eyewitnesses Gansheimer and Mowry changed their

stories which they gave in writing 8 years before, 2 months after the accident, from 25 to 30 miles per hour to 60 miles per hour as the speed of the truck and that it traveled between 150 and 200 feet instead of fifteen feet after the accident. But, of course, these discrepancies did not appear before the court when it approved the original settlement. In any event, the speed of the truck has no causal connection whatever with the accident.

After the hearing on the petition and the presentation of the evidence, heretofore recited, on July 29, 1958, Judge Carey, Probate Judge at the time, made an entry, among other things, "finding upon the evidence that the settlement and compromise of the unliquidated tort claim of said minor against Herman Burkhardt and Beals A. Runyan, was not made in the best interests of said minor and was not proper in the premises." The court granted the petition to vacate and set aside the former order of the court. Thereafter, an unusual occurrence took place. Judge Carey, whether importuned or not doesn't appear, on August 16, 1958, eighteen days later, amended his previous entry, which he calls an "Amended Entry" in which he recites the following: "However, the court further finds from the evidence adduced that no false or fraudulent representations were made to the mother, Barbara A. Kelley, or to this court at the time of the hearing on November 7, 1952, by either Wm. T. Hicks, representing the guardian, or by James M. Gorman, representing Herman Burkhardt and Beals A. Runyan." In all other respects, the "Amended Entry" was identical with the original.

The only question remaining, it seems to this court, is whether, from the evidence before this court, the trial court was justified and had the legal right to set aside the original entry of settlement on the ground "that it was not made in the best interests of said minor and was not proper in the premises." We know of no law which permits the doing of what was done in this case. What if this court should approve the trial court's order setting aside the settlement as being against the best interests of the child. Suppose another application is made for a settlement and upon reconsideration of a second settlement the court would approve a $5,000 increase in the second settlement, in addition to the first settlement of $1,500, we would again be

confronted with the *possibility* that five years hence, the best interests of the minor might dictate setting aside the second settlement, if, perchance, medical expenses had been increased in a substantial sum. Is there no finality in the settlement of minor's claims? There can be but one conclusion drawn here, and that is, from what has occurred during the eight years since the accident, the present Probate Judge thinks that Lowanna Sue Kelley did not get enough money in the original settlement; that the whole case ought to start all over again. If this be so, then this minor can, after eight years be given an opportunity to present to a jury her suit for $200,000 damages which she has pending in the Court of Common Pleas, and which, by the way, was filed since the setting aside of the former settlement. According to Section 2101.33, Revised Code, it is true that the Probate Court and the Courts of Common Pleas have a right to amend their judgments where fraud intervenes. See, also, Section 2325.01, Revised Code. But, the trial court, by its "Amended Entry," exonerates the only persons who could possibly be interested in perpetrating fraud, to wit, the lawyer for the minor and the lawyer for the defendants. See *Thompson* v. *Maxwell Land Grant & Ry. Co.*, 168 U. S., 451, 42 L. Ed., 539, 18 S. Ct., 121. In *Cunningham* v. *Cleveland Consolidated Bottling Works Co.*, 12 Ohio App., 309, it is stated in the first and third paragraphs of the syllabus that:

"A judgment in an action by a minor by next friend is valid and binding upon the minor unless vacated for errors appearing on the record or impeached for fraud or unfairness in obtaining the judgment."

"Evidence showing that since the trial and judgment the injuries to the minor have developed more seriously than was or could have been anticipated at the time of said trial and judgment does not sustain a claim of newly-discovered evidence, nor form the basis for an equitable impeachment of the judgment."

See, also, 27 American Jurisprudence, 852, Section 131; *Robinson* v. *Gatch, Exr.*, 85 Ohio App., 484. Incidentally, the court was correct in its finding that there was no fraud, and, therefore, its judgment setting aside the settlement is against the weight of the evidence.

The statutes of Ohio are clear in cases of this kind. Section 2111.18, Revised Code, provides for "claim for injury to ward or damage to property; settlement":

"When personal injury * * * is caused to a ward by wrongful act, neglect * * * which would entitle the ward to maintain an action and recover damages therefor, the guardian * * * may adjust and settle said claim with the advice, approval, and consent of the Probate Court. In such settlement, if the ward is a minor, the parent or parents may waive all claim for damages on account of loss of service of such minor, and such claim may be included in such settlement; * * * Such court may authorize such minor or person receiving such moneys to *execute a complete release on account thereof.* Such payment shall be a *complete and final discharge* of any such claim." (Emphasis added.)

That is exactly what was done in the case at bar. The guardian was paid, gave a release, the parents waived any claim they had, and the court approved the settlement. If the voiding of the settlement herein should stand, it would amount to an announcement by this court that there is no finality in settlements with minors; nobody could, with safety, settle a minor's claim. The very purpose of the section of the Code in question is to give some assurance to those who deal with minors, that settlements made according to the terms of the statute will stand. It seems to this court that what has happened in the case at bar, and what happens many times in similar situations, is a classic example of the proposition that "hindsight is better than foresight."

The position taken by the appellee in this case seems to be that if you make a settlement in good faith with a minor, honestly based on the facts existing at the time of the settlement, and have it approved by the Probate Court; if years later, you find that the doctors perchance were wrong in their prognosis; if there was a suggestion by the doctors of a *possibility* of later involvement (and we must remember that in medicine anything is possible); if it develops that the settlement would not have been made if the future had been foreseen; or if it appears in the light of future developments that the minor should have received more money; the settlement should be set aside and the

minor given a second bite at the cherry. The statute of Ohio says otherwise.

Another question was raised by the appellants. They say that before the minor is entitled to have the settlement set aside there should be a return of the $1,500 paid in pursuance of the settlement. While it is not necessary to pass on the question, it must be kept in mind that a settlement of this kind sounds in contract. *Picklesimer* v. *Baltimore & Ohio Rd. Co.*, 151 Ohio St., 1. It would appear that the minor can not keep the benefits of his contract and at the same time repudiate it. But we are not deciding the case on that ground.

From the evidence contained in the bill of exceptions, by which this court is bound, we hold that the judgment of the trial court setting aside the former settlement order is manifestly against the weight of the evidence. That judgment is, therefore, reversed, and the former entry of settlement is reinstated.

*Judgment reversed.*

MATTHEWS, P. J., and O'CONNELL, J., concur.